**In re Bill WILBORN and Lucy Wilborn, Debtors.**

**Bill WILBORN and Lucy Wilborn, Appellants,**

v.

**Lori GALLAGHER and Richard Names, Appellees.**

BAP No. SC–95–1943–OAsJ.

Bankruptcy No. 94–02867–H7.

United States Bankruptcy Appellate Panel of the Ninth Circuit.

Argued and Submitted Sept. 20, 1996.

Decided Nov. 21, 1996.

John D. Rittenhouse, San Diego, CA, for Bill & Lucy Wilborn.

Michael R. McCabe, Law Offices of Michael R. McCabe, El Cajon, CA, for Lori Gallagher and Richard Names.

Before: OLLASON, ASHLAND and JONES, Bankruptcy Judges.

## OPINION

OLLASON, Bankruptcy Judge:

Bill and Lucy Wilborn ("Debtors") have appealed the bankruptcy court's decision to reopen their bankruptcy case to allow creditors Lori Gallagher and Richard Names ("Appellees") to file a complaint to determine dischargeability of a debt.

**We AFFIRM.**

## STATEMENT OF FACTS

Debtors filed a voluntary Chapter 7[1] petition on March 16, 1994. Prior to the bank-

ruptcy, Appellees notified Debtors of potential litigation against Bill Wilborn for alleged fraud in connection with a purchase of real estate in which Wilborn was their broker. Nevertheless, Debtors did not list Appellees as creditors on their bankruptcy schedules, nor include them on the master mailing list.

The meeting of creditors was held on April 18, 1994. The notice of the § 341 meeting stated that it was a no asset case, and that the last day to file complaints to determine dischargeability of a debt was June 17, 1994. On September 18, 1994, Debtors' discharge was entered.

Approximately two weeks after their discharge, Debtors amended their Schedule F to include Appellees. A Notice to Creditors Added by Amendment ("Notice") was filed on September 29, 1994. The Notice consisted of standard form CSD 1101 for the United States Bankruptcy Court for the Southern District of California, which stated in pertinent part:

> You are hereby notified that the debtor is filing with the above-entitled case an amendment to the debtor's list of debts to include you as creditor of this estate. If you have questions concerning the legal effect of this filing upon you as a creditor, please consult your own legal counsel. Neither the Court nor the undersigned may advise you on legal matters.

The Notice informed Appellees of Debtors' bankruptcy filing, and indicated that the § 341 meeting was concluded. Attached to the Notice were copies of the notice of the § 341 meeting and the discharge order.[2] The standard § 341 meeting form indicated that the last day for filing complaints to determine nondischargeability was June 17, 1994, which had passed. The standard discharge form stated that Debtors were released from all dischargeable debts. It also stated:

> Any judgment heretofore or hereafter obtained in any court other than this court

---

**1.** References to Chapter, §, Section or Code are to the Bankruptcy Code, 11 U.S.C. §§ 101–1330. References to "Fed.R.Bankr.P." are to the Federal Rules of Bankruptcy Procedure 1001–9036, which make applicable certain Federal Rules of Civil Procedure ("Fed.R.Civ.P.") and the Federal Rules of Evidence ("Fed.R.Evid.").

**2.** Also attached to the notice was a copy of a Notice of Proposed Abandonment of Property.

is null and void as a determination of the personal liability of the debtor with respect to any of the following:

(a) debts dischargeable under 11 U.S.C. § 523;

(b) unless heretofore or hereafter determined by order of this court to be nondischargeable, debts alleged to be excepted from discharge under clauses (2), (4) and (6) and 11 U.S.C. § 523(a);

(c) debts determined by this court to be discharged.

It further stated:

All creditors whose debts are discharged by this order and all creditors whose judgments are declared null and void in paragraph 2 above are enjoined from instituting or continuing any action or employing any process or engaging in any act to collect such debts as personal liabilities of the above-named debtor.

Official Form No. 18.

On the reverse side of the Notice, Debtors' attorney completed and signed the Certificate of Service, averring that service was completed to Appellees. The certificate stated, in pertinent part:

That on 29th day of Sept., 1994, I served a true copy of the within [notice] by ... UNITED STATES FIRST CLASS MAIL on the following persons....

....

I certify under penalty of perjury that the foregoing is true and correct.

Dated on: Sept. 29, 1994.

Also filed was a Declaration of Service by Mail completed and signed by Lynn Williams ("Williams"), an employee of Debtors' attorney. Williams certified that on September 29, 1994, she mailed a copy of the Amendment to Schedule F to the Chapter 7 Trustee.

On March 14, 1995, Appellees filed a motion to reopen Debtor's bankruptcy case for the purpose of filing a nondischargeability complaint, and also filed the complaint. Appellees filed the complaint some 165 days, or five and one-half months, after September 29, 1994, when the Notice was allegedly served on them. Debtors filed their opposi-tion on April 12, 1995. Appellees filed their Reply on April 25, 1995, including identical declarations averring at paragraph 3:

3. I did not receive any mailings or other notice relating to this bankruptcy case until approximately January 11, 1995. I was previously unaware of the bankruptcy, and learned we had been added as claimants for the first time in January 1995.

According to Appellees' declaration, the complaint was filed some 62 days after they received the Notice on January 11, 1995.

Appellees' exhibits showed that the copy of the Certificate of Service accompanying the Notice to Appellees had been signed by Debtors' attorney before it was mailed to them.

The hearing on Appellees' motion began on May 12, 1995, and was continued to July 7, 1995 to allow both sides to file supplemental points and authorities. The court found that Appellees received the Notice in January, 1995. It based its finding on a distinction between cases where a creditor never receives the mailing and this case where the mailing was received late. In the latter, the presumption of service could be rebutted by such evidence as that presented by Appellees, the court held.

The court also determined that Appellees' delay in filing a motion to reopen was justifiable because the notices were confusing. The Notice and forms did not inform Appellees of their rights that had not been eliminated, yet they advised Appellees that the time for filing was passed, and the debt was discharged. Appellees' counsel told the court that they consulted with him in January, 1995, after they received the Notice, and it took several weeks thereafter to obtain the documentation to file the motion and complaint.

The court was persuaded by evidence that the Certificate of Service received by Appellees had been signed prior to the Notice being mailed. The court also found that Debtors knew about the alleged fraud claim, and they did not provide a satisfactory answer for failing to list Appellees on the original schedules. This finding implicitly was

that Debtors intentionally omitted Appellees.[3]

The bankruptcy court's order reopening the case was entered on August 29, 1995, and was timely appealed.

## ISSUE

Whether the bankruptcy court erred by determining that it had authority to extend the expired bar date to allow omitted Appellees to file a dischargeability complaint five and one-half months after the creditors allegedly were given notice of the bankruptcy, and two months after they admittedly received notice.

## STANDARD OF REVIEW

■ A trial court's decision to reopen a bankruptcy case and grant relief to a debtor is reviewed for an abuse of discretion. *In re Cisneros,* 994 F.2d 1462, 1464–65 (9th Cir. 1993). Likewise, a bankruptcy court's exercise of its equitable power is reviewed for an abuse of discretion. *Baker v. Delta Air Lines, Inc.,* 6 F.3d 632, 639 (9th Cir.1993). The court abuses its discretion if it bases its ruling upon an erroneous view of the law or a clearly erroneous assessment of the evidence. *In re Halstead,* 158 B.R. 485, 487 (9th Cir. BAP 1993), *aff'd,* 53 F.3d 253 (9th Cir.1995).

■ Interpretation of the Bankruptcy Rules and Code is a matter of law, subject to *de novo* review. *In re Price,* 871 F.2d 97, 98 (9th Cir.1989); *In re Lopez,* 192 B.R. 539, 543 (9th Cir. BAP 1996). The facts surrounding notice of bar dates and the filing of a bankruptcy petition are factual matters reviewed under the clearly erroneous standard. *In re De la Cruz,* 176 B.R. 19, 22 (9th Cir. BAP 1994). Whether an individual's due process rights have been violated is a mixed question of law and fact, reviewed *de novo. Rose v. United States,* 905 F.2d 1257, 1259 (9th Cir. 1990).

**3.** Letters concerning the potential litigation against Debtors were filed as exhibits to Appellees' Reply. Debtors did not object to this evidence, as indicated by the discussion at the July 7, 1995 hearing:
THE COURT: ... the evidence submitted by [Debtors] clearly show [sic] that your client knew of this claim.

## DISCUSSION

### A. The Panel's Jurisdiction

■ The Panel determines its proper jurisdiction *sua sponte. In re Vylene Enterprises, Inc.,* 968 F.2d 887, 889 (9th Cir.1992). The order granting the motion to reopen the case is interlocutory, because it did not resolve the merits of the nondischargeability complaint, but constituted a preliminary step in the nondischargeability process. *See In re Frontier Properties, Inc.,* 979 F.2d 1358, 1363 (9th Cir.1992); *see also In re Nichols,* 21 F.3d 690, 693 (5th Cir.) (appeal of order *inter alia* affirming bankruptcy court's order granting motion to reopen to determine dischargeability of debts was interlocutory), *cert. denied sub nom. Izen v. Nichols,* 513 U.S. 962, 115 S.Ct. 422, 130 L.Ed.2d 337 (1994); *In re Orlan,* 138 B.R. 374, 376–77 (E.D.N.Y.1992) (an order which reopens a hearing on a motion to appoint a trustee, or alternatively to convert a Chapter 11 case to Chapter 7 is interlocutory); *Home Life Ins. Co. v. Abrams Square II, Ltd.,* 95 B.R. 51, 53 (N.D.Tex.1988) ("The court will next address the Bankruptcy Court's finding that it does not have jurisdiction to reopen the bankruptcy case.") *Compare In re Ricks,* 89 B.R. 73, 75 (9th Cir. BAP 1988) (appellate court had jurisdiction over order granting both motion to reopen and motion to avoid liens).

■ Neither party moved for leave to appeal; however, the Panel has authority under Fed.R.Bank.P. 8003 to treat a Notice of Appeal as a Motion for Leave to Appeal. The standard for granting leave to appeal has been articulated by the Panel in *In re NSB Film Corp.,* 167 B.R. 176, 180 (9th Cir. BAP 1994), as follows:

Leave to appeal should not be granted unless refusal would result in wasted litigation and expense, the appeal involves a controlling question of law as to which

. . . .

[DEBTOR'S ATTY]: Well, be that as it may, Your Honor, the fact is we filed a declaration with this court under penalty of perjury that we mailed the amendment on September 29th.

there is a substantial ground for difference of opinion, and an immediate appeal would materially advance the ultimate termination of the litigation.

This case meets the criteria for appeal. The legal issues concern the scope of the bankruptcy court's equitable authority to allow an untimely nondischargeability complaint, and how long is too long to allow creditors to file a complaint once they receive notice. A due process issue has also been raised concerning the adequacy of the Notice. These issues are ones that generate substantial differences of opinion. *See In re Price,* 79 B.R. 888, 889 (9th Cir. BAP 1987) (Panel granted leave for appeal of order granting motion to file late nondischargeability complaint to decide issue of whether notice to a creditor's attorney is sufficient to constitute notice to the creditor), *aff'd,* 871 F.2d 97 (9th Cir.1989).

In addition, the criteria that an immediate appeal will materially advance the ultimate termination of litigation is also required and is met in this case. If the bankruptcy court's conclusions of law were incorrect concerning the untimely complaint, it abused its discretion by reopening the case and could not properly hear the complaint. *Compare In re Chabot,* 992 F.2d 891, 893 (9th Cir.1993) (considering appeal of order reopening case and deciding lien avoidance motion, and holding that absent a prejudicial delay, and avoidance action may be brought at any time).

### B. Time Limits For § 523(a)(3)(B) Debts

■ In this case, there is no dispute that the Appellees received notice of Debtors' bankruptcy after the bar date for filing nondischargeability complaints. Appellees' complaint alleges that the debt is nondischargeable under § 523(a)(2) and (a)(4) for fraud. Section 523(c)(1) requires:

Except as provided in subsection (a)(3)(B) of this section, the debtor shall be discharged from a debt of a kind specified in paragraph (2), (4), or (6) of subsection (a) of this section, unless, on request of the

creditor to whom such debt is owed, and after notice and a hearing, the court determines such debt to be excepted from discharge under paragraph (2), (4), or (6), as the case may be, of subsection (a) of this section.

The time for bringing a § 523(c) complaint is governed by Fed.R.Bankr.P. 4007(c), which generally provides that a complaint to determine dischargeability must be filed within 60 days of the § 341 meeting, or the debt is discharged.

■ However, there is an exception to the interplay of these rules if the debt falls under the § 523(a)(3)(B) exception where the creditor could not timely file a complaint because he was omitted from the schedules. In a closed, no asset case, if the debt is of a type covered by § 523(a)(3)(B), it has not been discharged, and is nondischargeable. *In re Beezley,* 994 F.2d 1433, 1434 (9th Cir.1993). Section 523(a)(3)(B) provides:

(a) A discharge under section 727, 1141, 1228(a), 1228(b), or 1328(b) of this title does not discharge an individual debtor from any debt—

. . . .

(3) neither listed nor scheduled under section 521(1) of this title, with the name, if known to the debtor, of the creditor to whom such debt is owed, in time to permit—

. . . .

(B) if such debt is of a kind specified in paragraph (2), (4), or (6) of this subsection, timely filing of a proof of claim and timely request for a determination of dischargeability of such debt under one of such paragraphs, unless such creditor had notice or actual knowledge of the case in time for such timely filing and request; . . . .[4]

The debt in this case falls under the exception because Appellees did not receive actual notice of the bankruptcy until either Septem-

---

4. The word "and" in § 523(a)(3)(B) has been construed in the case law as "or" to "correct a legislative error defeating the obvious legislative intent." *In re Walker,* 195 B.R. 187, 196 n. 10 (Bankr.D.N.H.1996); *In re Haga,* 131 B.R. 320, 323 (Bankr.W.D.Tex.1991) (citing *In re Padilla,* 84 B.R. 194, 196 (Bankr.D.Colo.1987)).

ber 29, 1994 [5] or January 11, 1995, both dates being beyond the bar date of June 17, 1994.

■ Because § 523(a)(3)(B) is specifically exempted from the operation of § 523(c), it is governed by Fed.R.Bankr.P. 4007(b), *In re Santiago,* 175 B.R. 48, 50 (9th Cir. BAP 1994). Fed.R.Bankr.P. 4007(b) provides:

(b) A complaint other than under § 523(c) may be filed at any time. A case may be reopened without payment of an additional filing fee for the purpose of filing a complaint to obtain a determination under this rule.

■ An alternate source of authority for allowing an untimely complaint under such circumstances is the court's equitable power under § 105(a), *inter alia,* that "[t]he court may issue any order, process, or judgment that is necessary or appropriate to carry out the provisions of this title." These powers must be exercised within the confines of the Code. *Norwest Bank Worthington v. Ahlers,* 485 U.S. 197, 206, 108 S.Ct. 963, 968–69, 99 L.Ed.2d 169 (1988).

■ When a debtor fails to schedule a creditor and the limitations period [6] expires, he waives or is equitably estopped from asserting the passing of the 60–day deadline as a defense to a creditor's complaint for a dischargeability determination. *Halstead,* 158 B.R. at 487; *Santos,* 112 B.R. at 1009; *Walker,* 195 B.R. at 207. The bankruptcy court can resort to its § 105 general equitable powers by providing a new deadline for the nondischargeability complaint. *Walker,* 195 B.R. at 207; *Halstead,* 158 B.R. at 487. No courts have yet set equitable time limits for filing the nondischargeability complaint under these circumstances (where notice is received after the bar date).

■ Debtors contend that the court had no authority to extend the bar date beyond 30 days. They cite *In re Dewalt,* 961 F.2d 848 (9th Cir.1992). The facts in *Dewalt* differ from the instant case. In *Dewalt,* the creditor was not listed in the debtor's sched-

ules and was inaccurately listed on the Notice of Intent. It did not receive notice of the bankruptcy filing, but had actual notice seven days before the bar date for filing nondischargeability complaints. It did not file its nondischargeability complaint until some five months after it received notice (October 26, 1987 to March 21, 1988), and the debtor sought to dismiss the complaint.

The Ninth Circuit Court of Appeals held that requiring the creditor to file a motion to extend the bar date under those circumstances would be an unwarranted burden upon a conscientious creditor. *Dewalt,* 961 F.2d at 851. The court noted that the second sentence of Rule 4007(c) provided guidance: "The court shall give all creditors not less than 30 days notice of the time so fixed [for filing dischargeability complaints] in the manner provided in Rule 2002." *Id.* It held that a court must determine a reasonable period to expect a creditor to act before incurring the penalty of default, and stated:

Nevertheless, the 30–day notice provision of Rule 4007(c) provides a guide to the minimum time within which it is reasonable to expect a creditor to act at penalty of default.

Even 30 days notice may not be enough if truly extraordinary circumstances are presented, as when an unsophisticated creditor, not represented by counsel, receives only the most sketchy notice that a bankruptcy has been filed.[4] On the other hand, a somewhat lesser period may be sufficient where there is clear evidence the creditor has enough advance knowledge of the bar date to file the complaint or request an extension and has purposefully chosen to lie in wait rather than present its claim.

_____

4  *In no event, however, could the reasonable time period contemplated by section 523(a)(3)(B) be greater than the 80 days advance*

5. Service by mail is complete upon mailing. Fed.R.Bankr.P. 7005/Fed.R.Civ.P. 5(b).

6. Fed.R.Bankr.P. 4007(c) is the equivalent of a statute of limitations, not a jurisdictional prerequisite. *In re Santos,* 112 B.R. 1001, 1005–1006

(9th Cir. BAP 1990). Thus, Fed.R.Bankr.P. 4007(c) is subject to equitable relief under the doctrines of estoppel, waiver or equitable tolling. *Id.* at 1009.

notice a properly scheduled creditor will ordinarily receive.

*Id.*

The Court of Appeals ruled that the creditor's complaint should not have been dismissed, notwithstanding that it was filed some 146 days after they received actual notice. *Dewalt* held that a creditor must receive at least 30 days notice, and will normally have up to 80 days notice of the deadline for nondischargeability actions, or the debt falls within section 523(a)(3)(B). *Santiago*, 175 B.R. at 50. It did not examine Fed.R.Bankr.P. 4007(b), nor did it hold or suggest that a limitations period had run on the creditor's action under § 523(a)(3)(B).

The BAP in *Santiago* found authority under Fed.R.Bankr.P. 4007(b) to extend the deadline by some four months after the creditor received notice, where the creditor did not receive notice until after the bar date passed. Other cases have also granted lengthy extensions where the creditors did not receive notice until after the bar date. *In re Franklin*, 179 B.R. 913, 924 (Bankr. E.D.Cal.1995) (complaint filed before actual notice but approximately eight months after bar date could be filed "at any time" under rule 4007(b)); *In re Lyman*, 166 B.R. 333, 337 (Bankr.S.D.Ill.1994) (creditors could file one year after receiving untimely notice, pursuant to Rule 4007(b)).[7] *See also In re Marino*, 195 B.R. 886, 894 (Bankr.N.D.Ill.1996) (remedy of extension of time to file complaint is available to bankruptcy court where debtor knowingly omitted creditor from the schedules with intent to preclude complaint). In this case, there is the added dimension that Debtors intentionally omitted Appellees from the schedules until after their discharge was entered.

We hold, therefore, that under Fed. R.Bankr.P. 4007(b) or under the bankruptcy court's equitable powers it had authority to allow Appellees to file their complaint up to 165 days after they received notice of the bankruptcy.

■ Accordingly, the Panel need not address the bankruptcy court's factual findings regarding Appellees' notice. For example, Debtors contend that if Appellees received notice on September 29, 1994 rather than January 11, 1995, they filed too late to come within the 80-day outer limit mentioned in *Dewalt*: 165 days after the September notice, as opposed to 62 days after the January notice. Since we have determined that Appellees could file the complaint "at any time" under Fed.R.Bankr.P. 4007(b), the Panel need not consider the issue of when Appellees received the notice. Nor need the Panel address Appellees' due process arguments that the service was defective or the Notice did not inform them of their right to file a complaint.[8]

### C. Motion to Reopen

■ The source of a bankruptcy court's power to reopen a closed case is § 350(b), which gives the court discretion to reopen a case "to administer assets, to accord relief to the debtor, or for other cause." *Cisneros*, 994 F.2d at 1465.

Having determined that the bankruptcy court could properly extend the deadline for Appellees' filing of their dischargeability complaint, the Panel finds that cause existed for reopening the case.

### CONCLUSION

The bankruptcy court had authority under Fed.R.Bankr.P. 4007(b) and under its equitable powers to extend the deadline for Appellees' nondischargeability complaint to the date it was filed, on March 14, 1995. There-

7. In this case the bankruptcy court addressed the application of equitable defenses to the late filing, and denied them. *Lyman*, 166 B.R. at 337.

8. The adequacy argument would fail, in any case, because the standard discharge form (Official Form No. 18), is the culprit, not the local Notice. *See Walker*, 195 B.R. at 189–190 ("Logicians, whether medieval or not, will recognize that paragraph 1 of this form order is a perfect tautology. The order discharges a particular debt only

if it is *later* determined *somewhere* that no ground for nondischargeability under § 523 of the Bankruptcy Code exists as to that debt."). Because Debtors sent Appellees a copy of the official discharge order, Appellees received all of the notice statutorily required concerning the dischargeability of their debt. *In re Barsky*, 85 B.R. 550, 554 (C.D.Cal.1988) *aff'd*, 933 F.2d 1013 (9th Cir.1991).

fore, cause existed to reopen the case to enable the complaint to be heard. The bankruptcy court did not abuse its discretion by granting the motion to reopen, and its order of August 29, 1995 is **AFFIRMED.**